IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER R. GONZALES,<br><br>Plaintiff,<br><br>V.<br><br>PAN AMERICAN LABORATORIES, L.L.C.; PAMLAB, L.L.C.; AND NESTLE HEALTH SCIENCE-PAMLAB, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 3:14-cv-2787-L |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Christopher Gonzales has filed his Objection to Defendants' Bill of Costs and Motion for Court to Review/Retax Costs, *see* Dkt. No. 56 (the "Objection"), which United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for recommendation, *see* Dkt. No. 62.

Defendants Pan American Laboratories, L.L.C., Pamlab, L.L.C., and Nestle Health Science-Pamlab, Inc. (collectively, "Defendants") have filed a response. *See* Dkt. No. 59.

For the reasons explained below, the Court should grant Plaintiff's Objection to Defendants' Bill of Costs and Motion for Court to Review/Retax Costs [Dkt. No. 56].

**Background**

On October 20, 2017, the Court granted Defendants' Motion for Summary Judgment [Dkt. No. 52] and entered Judgment [Dkt. No. 53], which assessed taxable

costs of court against Plaintiff Christopher Gonzales.

On November 3, 2017, Defendants filed their Bill of Costs [Dkt. No. 54] requesting taxable costs in the amount of $7,694.61. That amount includes $1,677.67 in various transcription fees; $30.24 for printing (but which the parties agree to be for photocopying); $60.00 for private processor service of subpoenas; and $5,926.70 in other electronic database costs from Computer Forensic Services, Inc. Defendants supported their Bill of Costs with the affidavit of Michael J. Deponte swearing that the listed costs were necessarily incurred; an itemization indicating the total costs for each of the transcription, subpoena, copy, and computer forensic services; and invoices showing the amounts billed by Defendants' attorneys for transcription, subpoena, and computer forensic services – but not photocopy – expenses. *See* Dkt. No. 54 at 3-23 of 23.

Plaintiff challenges Defendants' requested costs on the basis that the costs are either too high or not properly taxable as costs under 20 U.S.C. § 1920.

First, Plaintiff objects to Defendants' requested transcription fees. Plaintiff takes issue with two invoices from The Legal Connection – one for $465.30 and one for $958.32 – for transcribing phone conversations that Plaintiff had recorded while he was still employed by Defendants. Plaintiff maintains that he provided Defendants with the electronic recording and an accompanying transcript and that The Legal Connection invoices for duplicate transcriptions are "unnecessary and needlessly costly" because Defendants' "own support staff could have provided [an additional transcript] at no additional/outside cost." Dkt. No. 56 at 2 of 6. Plaintiff also objects to

the total $90.00 in administrative fees and $129.42 in late fees reflected in the invoices, arguing that the U.S. Code and Federal Rules do not provide for recovery of "administrative fees" unrelated to actual transcription services and that "[e]quity dictates that Plaintiff should not be penalized and taxed for Defendant[s'] untimely failure to pay ... third-party vendors." *Id.* at 3 of 6.

Plaintiff similarly objects to Defendants' attached invoice for $234.25 from Deposition Resources, Inc., which Defendants also included as transcription fees. Plaintiff notes that the $234.25 fee represents the cost for a certificate of non-appearance – not a deposition transcript – and argues that such a fee is not a taxable cost under 20 U.S.C. § 1920. Plaintiff further explains that Plaintiff's failure to appear at his deposition was justified by the circumstances and was the subject of Defendants' previous motion to compel, which the Court terminated as moot in granting summary judgment.

Second, Plaintiff objects to Defendants' request for $30.24 in photocopy fees. Plaintiff contends that, because Defendants did not submit documentation establishing what was copied and why the copying was necessary for this case, the Court should deny Defendants recovery of the $30.24.

Third, Plaintiff objects to $25.00 of Defendants' $60.00 in subpoena fees from Investigative Process Services, Inc. Plaintiff explains that the $60.00 fee includes a $25.00 "rush" fee that was "wholly unnecessary." Dkt. No. 56 at 4 of 6.

Fourth, Plaintiff objects to Defendants' $5,926.70 in "other costs" from Computer

Forensic Services, Inc. Plaintiff explains that the parties conducted "no formal e-discovery ... in this case, and Plaintiff did not present Defendant with any hard drive or other hardware that required 'imaging.'" *Id.* at 5. Plaintiff further contends that Defendants' "[c]omputer consultation, searching, and monthly fees ... are not properly chargeable as taxable costs." *Id.*

**Legal Standards and Analysis**

Federal Rule of Civil Procedure 54(d) gives a court discretion to award costs to a prevailing party. *See* FED. R. CIV. P. 54(d). 28 U.S.C. "§ 1920 defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Section 1920 allows a court to tax as costs certain enumerated categories of fees, including "[f]ees of the clerk and marshal," 28 U.S.C. § 1920(1); "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," *id.* § 1920(2); "[f]ees and disbursements for printing and witnesses," *id.* § 1920(3); and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," *id.* § 1920(4).

As explained above, Defendants request costs under each of these categories, and Plaintiff objects to each of Defendants' requests. For the reasons explained below, the undersigned concludes that the Court should sustain Plaintiff's objections to Defendants' requests for transcript, copy, subpoena, and electronic database costs.

I. Transcript Costs

Plaintiff's objection to Defendants' claimed transcript costs should be sustained

because Defendants have not shown that the transcripts were necessarily obtained for use in this case and because certificates of non appearance are not recoverable under Section 1920.

Defendants request $1,423.62 in fees from The Legal Connection for transcripts of "HR MEETING[s] HELD" on September 17, 2012 and August 23, 2012. *See* Dkt. No. 54 at 5-6 of 23. As a preliminary matter, the undersigned concludes that Defendants may not recover the $129.42 in associated late fees, which Defendants have not adequately justified as a permitted taxable cost under Section 1920. *See Iniekpo v. Avstar Int'l Corp.*, No. SA-07-CA-879-XR, 2010 WL 3909321, at *2 (W.D. Tex. Sept. 30, 2010) (deducting late payment fees from the recoverable costs).

As to the remaining charges reflected in the invoices, Defendants' Bill of Costs, its attachments, and Defendants' response to Plaintiff's Objections offer no guidance as to why transcripts of these recorded meetings were necessarily obtained for use in this case. The supporting invoices and Defendants' affidavit and itemization offer no description of the transcribed meetings, and the only evidence indicating that the claimed transcripts were necessary is the statement in Mr. Deponte's affidavit that "all costs listed on the bill of costs and the attached itemization ... were necessarily incurred in this action." *See* Dkt. No. 56 at 3 of 23. Without any information aside from that conclusory statement, the Court should disallow the $1,423.62 in fees from The Legal Connection. *See Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 582-83 (W.D. Tex. 2010).

As to the $234.25 cost for a certificate of nonappearance from Deposition Resources, Inc., which Defendants characterize as additional transcript fees under Section 1920(2), "[S]ection 1920 does not explicitly authorize certificates of non appearance." *Mancia v. JJ Chan Food, Inc.*, No. 3:12-cv-2467-L (BF), 2016 WL 4468092, at *4 (N.D. Tex. June 21, 2016) (citing *Canion v. United States*, No. EP-03-CA-347-FM, 2005 WL 2216881, at *3 (W.D. Tex. Sept. 9, 2005) ("Because these items are not authorized by statute ... the Court reduces the bill of costs by ... $83.00 for the certificate of nonappearance ....")), *report and recommendation adopted*, No. 3:12-CV-2467-L, 2016 WL 4446627 (N.D. Tex. Aug. 24, 2016). The Court should deny Defendants' claimed $234.25 in transcript fees from Deposition Resources, Inc.

The Court should accordingly sustain Plaintiff's objection to Defendants' requested transcript fees and reduce Defendants' transcript costs by $1,657.87 to $19.80.

II. Subpoena Costs

Plaintiff's objection to Defendants' requested $25.00 fee for expedited service of subpoenas should be sustained because rush fees for service of subpoenas are not recoverable under Section 1920(1).

Although "the United States Court of Appeals for the Fifth Circuit has held that, 'absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920,'" *Harris v. Dallas Cty. Hosp. Dist.*, No. 3:14-cv-3663-D, 2016 WL 8674685, at *2 (N.D. Tex. Aug. 5, 2016) (quoting *Marmillion v. Am. Intern.*

*Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (unpublished) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael*, 118 F.3d 245, 257 (5th Cir. 1997))), Plaintiff does not argue that Defendants' $60.00 in private process server fees are not taxable under 1920(1); Plaintiff objects only to the $25.00 rush fee included in the charge from Investigative Process Services. And, because "Section 1920(1) does not specifically provide for the recovery of costs incurred as a result of rush service of subpoenas," *Saldivar v. Austin Indep. Sch. Dist.*, No. A-14-CA-00117-SS, 2016 WL 1064654, at *8 (W.D. Tex. Mar. 15, 2016), Plaintiff's objection to the rush fee should be sustained.

The Court should accordingly reduce Defendants' $60.00 in requested subpoena costs by $25.00 to $35.00.

III. Copying Costs

Plaintiff's objection to Defendants' copying costs should be sustained because Defendants have not made the required showing that the photocopy expenses claimed are for copies "necessarily obtained for use in litigation" and not "obtained simply for the convenience of counsel." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991).

Defendants list $30.24 in printing fees on their Bill of Costs, *see* Dkt. No. 54 at 1 of 23, but explain in their response that the fees were incurred for making "copies of personnel files, handbooks, and documents from human resources for use with the litigation of this matter," Dkt. No. 59 at 3 of 6. And Defendants note in their response that "[t]he photocopying of roughly 432 pages of documents at $0.07/page, was a

necessary charge for this litigation." *Id.*

But, in support of their Bill of Costs, Defendants submitted only a bare affidavit that repeats the declaration on the clerk's approved form stating that all of the requested costs were necessarily incurred in this action. *See* Dkt. No. 56 at 3 of 23. That conclusory assertion alone is not enough, and, without more, the Court cannot determine whether the copies were necessarily obtained for use in the present litigation. *See Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, Civ. A. No. H-07-2684, 2009 WL 1457632, at *6 (S.D. Tex. May 26, 2009). Although it is not necessary for "a prevailing party to identify every xerox copy made for use in the course of legal proceedings, [a court will] require some demonstration that reproduction costs necessarily result from that litigation." *Fogleman*, 920 F.2d at 286; *see also Kellogg Brown & Root Intern., Inc.* 2009 WL 1457632, at *6 ("Although an item-by-item description is not required, some information of the types or categories of documents copied and the reason for the copies must be furnished."). And, while many of the photocopies here may have been necessarily incurred, without more information, the Court cannot discern which copies were necessary and which were not. *See Byers v. Dallas Morning News*, No. 3-97-cv-1159, 2000 WL 1842415, at *2 (N.D. Tex. Dec. 3, 2000); *Datapoint Corp. v. Picturetel Corp.,* No. 3:93-cv-2381-D, 1998 WL 401630, at *5 (N.D. Tex. July 9, 1998).

The Court should accordingly grant Plaintiff's objection and deny Defendants' request for $30.24 in photocopy fees.

IV. Electronic Database Costs

Plaintiff's objection to Defendants' claimed electronic database costs should be sustained because Defendants have shown neither (1) that the activity at issue constitutes "printing" under Section 1920(3) nor (2) that the electronic copies were necessarily obtained for use in the case under Section 1920(4).

Plaintiff argues that Defendants' requested $5,926.70 in fees from Computer Forensic Services, Inc. are not properly chargeable as taxable costs. Defendants explain in their response that "Defendants gathered all documents relevant and discoverable in this matter in order to prepare and timely respond to Plaintiff's discovery requests" and "use[d] an electronic database to host a copy of all documents (emails and attachments)." Dkt. No 59 at 5 of 6. Defendants contend that, "[s]ince the electronic database was created merely in order to reduce costly printing, copying, and paper production, this expense falls within the category of costs recoverable under §1920(3)." *Id.*

Despite Defendants' reference to only Section 1930(3) in their response, because Defendants' response and at least one of their invoices from Computer Forensic Services, Inc. clearly reference copying, *see* Dkt. No. 54 at 11 of 23 ("Copy data from external drive ...."), the undersigned construes Defendants' request as under alternatively Section 1930(3) or Section 1930(4).

First, Defendants are not entitled to their electronic database costs under Section 1930(3) because Defendants have not shown that the electronic database

services in this case constitute "printing" under a narrow interpretation of Section 1920(3). Defendants cite *Chenault v. Dorel Indus., Inc.*, No. A-08-CA-354-SS, 2010 WL 3064007, at *4 (W.D. Tex. Aug. 2, 2010), for the proposition that, because using the electronic database saved printing costs, fees associated with the database are recoverable under Section 1920(3).

In *Chenault*, the plaintiffs demanded in a discovery request that a defendant produce "all emails" pertaining to a particular issue in the case. 2010 WL 3064007, at *3. The responding defendant's "search of all possible emails yielded an estimated 30 gigabytes of materials, consisting of approximately 50,000 emails with attachments. That number was whittled down to 20,000 emails with attachments (a total of approximately 800,000 pages) once [the responding defendant] bought a program that was able to perform a more sophisticated search." *Id.* (citations omitted). But, when the defendants later sought to recover the cost of the electronic database in their bill of costs, the plaintiffs objected, arguing, as Plaintiff does here, that "creation of a database is not a cost that is recoverable under 28 U.S.C. § 1920." *Id.* at *4 (citing the plaintiffs' objections). The court overruled the plaintiffs' objection to the electronic data base costs and found them recoverable under Section 1920(3), explaining that

> reproduction costs necessarily obtained for use in the case are recoverable, provided the prevailing party demonstrates that necessity. *Fogleman*, 920 F.2d at 286. In this case, the electronic data was produced in lieu of extremely costly paper production. Defendants state they were seeking to save costs by not printing out thousands of pages of documents which would have otherwise been required in response to Plaintiffs' discovery request. Therefore, the Court finds the expense falls within the category of costs recoverable for "fees and disbursements for printing"

> under § 1920(3). *See Neutrino Devel. Corp. v. Sonosite, Inc.*, [Civ. A. No. H-01-2484,] 2007 WL 998636[,] at *4 (S.D. Tex. [Mar. 30,] 2007) (overruling an objection to taxing costs associated with an electronic database because the discovery "was produced in lieu of costly paper production" under § 1920(3), and the prevailing party had "save[d] costs by not printing out hundreds of documents").

*Chenault*, 2010 WL 3064007, at *4.

But, since the decision in *Chenault*, the United States Supreme Court has underscored the "narrow scope of taxable costs" and has emphasized that "taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012); *see also id.* ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized in §1920."). Some circuit courts of appeal have applied the Supreme Court's contemporary interpretation of Section 1920 to limit the electronic discovery costs recoverable under Section 1920(4). *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 929-30 (9th Cir. 2015); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1330 (Fed. Cir. 2013); *Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012). But no circuit courts of appeal and few district courts have addressed whether electronic database costs like those at issue here are recoverable as "printing" costs under Section 1920(3).

In light of the developments in binding and persuasive jurisprudence since

*Chenault* was decided, *Chenault* and *Neutrino* are unpersuasive here, and the Court should interpret Section 1920(3) in light of the statutory text and more recent case law limiting taxable costs. *See generally Vital v. Nat'l Oilwell Varco, L.P.*, No. H-12-1357, 2015 WL 7740417, at * 5 (S.D. Tex. Nov. 30, 2015) ("The [*Chenault*] court did not base its analysis on the meaning of 'printing' in § 1920(3) or 'copies' or 'exemplification' in § 1920(4). The court's analysis does not sufficiently focus on the statutory language or take into account other case law limiting taxable costs in light of that language.").

After considering case law limiting taxable costs, the language of Section 1920, and the ordinary meaning of "print," the undersigned concludes that Section 1920(3) does not cover the electronic database services that Defendants describe here. The statute governing taxable costs does not define "printing," and "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning." *Taniguchi*, 566 U.S. at 566. Although the undersigned is unaware of any decision in which a court has interpreted the meaning of "printing" – or its simple form, "print" – in the context of Section 1920(3), in *Simonoff v. Expedia, Inc.*, 643 F.3d 1202 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit assessed the ordinary meaning of "print" as used in the Fair and Accurate Credit Transactions Act, Pub. L. No. 108-159, 117 Stat. 1952, an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ("FACTA"):

> "Print" refers to many different technologies – from Mesopotamian cuneiform writing on clay cylinders to the Gutenberg press in the fifteenth century, Xerography in the early twentieth century, and modern

> digital printing – but all of those technologies involve the making of a tangible impression on paper or other tangible medium. *See generally* S.H. Steinberg, Five Hundred Years of Printing (new ed.1996). Although computer technology has significantly advanced in recent years, we commonly still speak of printing to paper and not to, say, iPad screens. Nobody says, "Turn on your Droid (or iPhone or iPad or Blackberry) and print a map of downtown San Francisco on your screen."

*Simonoff*, 643 F.3d at 1205. The Court of Appeals explained that, against this backdrop,

> [t]he ordinary meaning of "print" is clear: printing involves a physical imprint onto paper or another tangible medium. *See, e.g.*, Webster's Third New International Dictionary 1803 (2002) ("[T]o make an impression in or upon: mark with a print."); American Heritage Dictionary of the English Language 1441 (3d ed. 1996) ("To make an impression on or in (a surface) with a device such as a stamp, seal, or die."); Oxford English Dictionary Online, available at: http://www.oed.com (last visited May 9, 2011) ("To make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc., esp. from inked blocks, types, or plates."). In short, " 'print' in its transitive verb form ordinarily connotes the transfer of words or images to a tangible medium – often paper." ... The main dictionary definitions of "print" are supported by standard modern usage of that term. As the Seventh Circuit observed:
>
>> To "print" a receipt ... ordinarily connotes recording it on paper. That is why [the plaintiff] had to print a copy of his receipt to get it off of his computer; it is why the machine used to transfer text from a computer to paper is called a printer; and it is why a judge who asks a law clerk to print a case does not intend for the clerk to merely display the case on his computer screen.
>
> *Shlahtichman*, 615 F.3d at 799 (alteration in original) (internal quotation marks and citation omitted).

*Id.* at 1208.

Defining "printing" under Section 1920(3) to exclude "us[ing] an electronic database to host a copy of all documents (emails and attachments)," Dkt. No. 59 at 5

of 6, is consistent with the language employed by Congress in enacting and amending Section 1920. In enacting Section 1920, Congress did not use language that would have unequivocally intended "printing" under Section 1920(3) to include electronic data copying and storage. And, although in 2008, Congress expanded the scope of 1920(4) to cover the "costs of making copies of any materials" – its original language pertained to only "copies of paper" – *see* Judicial Administration and Technical Amendments Act of 2008, Pub.L. No. 110-406, § 6, 122 Stat. 4291, 4292, Congress has not also broadened Section 1920(3).

And Defendants propose no reason why the Court should broadly interpret "printing" to include the service at issue here. In their response to Plaintiff's objections, Defendants rely on *Chenault* without explaining how the specific process involved here amounts to "printing" under Section 1920(3). And the invoices from Computer Forensic Services, Inc. offer little additional support, listing a slew of billed activities – consulting, copying data, making images indexed and searchable, unzipping emails, indexing emails, searching emails, processing data, and hosting data – that no one claims would fall within the meaning of "printing" under Section 1920(3) as discussed above. Accordingly, Defendants have not shown that their electronic database costs are recoverable under Section 1920(3).

In the alternative, Defendants ask the Court to tax against Plaintiff the costs that Defendants would have expended in physically printing the electronically-stored documents: "By using this service, Defendants saved the costs of printing and copying

approximately $387,126 pages of documents, which would have been taxable against Plaintiff in the amount of $27,098.82." Dkt. No. 59 at 5 of 6. The Court should decline Defendants' request as contrary to the Supreme Court's emphasis that taxable costs are narrow and include only those enunciated in Section 1920. A party's substituting one service for another service that is encompassed by Section 1920 does not make the substitute service's fees taxable where Congress has not clearly so intended. The Court should accordingly deny Defendants' alternative request for $27,098.82 in physical printing costs.

Second, Defendants are not entitled to their electronic database costs under Section 1920(4) because, even assuming that any of the billed activities amount to "copying" within the meaning of subsection (4), Defendants have not shown that the electronic copies were necessarily obtained for use in the case. Although the U.S. Court of Appeals for the Fifth Circuit has not, *see U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 131 (5th Cir. 2015) (declining to decide which electronic discovery costs are recoverable under Section 1920(4)), several circuit courts of appeal have considered whether – in light of the 2008 amendments to Section 1920 and the Supreme Court's decision in *Taniguchi*, both discussed above – various electronic discovery methods are recoverable under Section 1920(4), often limiting the electronic discovery costs recoverable. *See Online DVD-Rental Antitrust Litig.*, 779 F.3d at 929-30 (assuming, without deciding, that "creat[ing] new copies of documents inside a database" was "copying" under Section 1920(4) but holding that the party seeking costs "fail[ed] to

establish the copies were necessarily obtained for use in the case"); *CBT Flint Partners, LLC*, 737 F.3d at 1330 (To the extent that a party is obligated to produce (or obligated to accept) electronic documents in a particular format or with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with such characteristics preserved are recoverable as 'the costs of making copies ... necessarily obtained for use in the case.' But only the costs of creating the produced duplicates are included, not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication." (footnote and citation omitted)); *Country Vintner*, 718 F.3d at 260 ("[In this case, subsection (4) limits taxable costs to ... converting electronic files to non-editable formats, and burning the files onto discs."); *Race Tires Am.*, 674 F.3d at 171 (holding that "of the numerous services [that] [electronic discovery] vendors performed, only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying' " under Section 1920(4)). *But see Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 297 (6th Cir. 2015) (finding the approach adopted by *Race Tires Am.* and *Country Vintner* "overly restrictive").

In *Online DVD-Rental*, the Ninth Circuit considered whether Section 1920(4) allows a party to recover charges related to the "reproduction of documents for potential production into a[n] [electronic] database where they could be viewed," *id.* at 929 (quoting a declaration supporting a party's costs). The Ninth Circuit explained that

> an upload of data is ... akin to the paper-document analogue of faxing a document from the client site to the law firm, a process which involves the transmitting of data from location to location and which also results in a facsimile copy of the original document.
>
> The cost of making the copy is not rendered non-taxable merely because it was created by using fax machines rather than a photo-copier. Conversely, § 1920(4) does not award costs merely because a process resulted in the creation of a copy. That the fax process creates a copy does not, by itself, establish that the cost is taxable under § 1920(4). Rather, a further determination is required: whether the copy was necessarily obtained for use in the case. Like any other copy, if the faxed copy was created to be produced in discovery, the cost of making the fax would be taxable under § 1920(4). However, if the faxed copy was created solely for the convenience of counsel, the cost of making the copy would not be taxable.
>
> ...
>
> A narrow construction of § 1920(4) requires recognition that the circumstances in which a copy will be deemed "necessarily obtained" for use in a case will be extremely limited. That a chosen "document production process" requires the creation of a copy does not establish that the copy is necessarily obtained for use in the case. A lawyer may review electronically stored information for privilege either by viewing the original documents on the client's computer or, alternatively, by viewing copies uploaded to the lawyer's computer. Although the latter method of review requires the creation of a copy, the ability to conduct the review by looking at the original document establishes that the uploaded copy was not necessarily obtained for use in the case.

779 F.3d at 929-30. By these principles, the Court of Appeals assumed – without deciding – that the data upload process was "copying" under Section 1920(4) but denied recovery of the electronic data upload charges because the requesting party's description of these charges "establishe[d] only that the copy is essential to the document production process that [the party] (or its litigation support vendor) elected to employ, and fail[ed] to establish the copies were necessarily obtained for use in the

case." *Id.* at 930.

The undersigned finds *Online DVD-Rental* persuasive here. Even assuming that Defendants' electronic storage service "copied" documents onto an electronic database within the meaning of Section 1920(4), Defendants have not shown that the stored documents were necessarily obtained for use in this case. The invoices, affidavit, and itemization attached to Defendants' Bill of Costs give no explanation as to how the electronic copies were necessary in this case. In their response, Defendants explain that, "[a]s normal for any litigation, Defendants gathered all documents relevant and discoverable in this matter in order to prepare and timely respond to Plaintiff's discovery requests. Defendants made the decision to use an electronic database to host a copy of all documents (emails and attachments) in an effort to reduce copying and printing costs." Dkt. No. 59 at 5 of 6. But not all relevant and discoverable documents are necessarily obtained for use in the case within the meaning of Section 1920(4). And Defendants' choosing to proactively gather any and all relevant and discoverable materials and copy them onto an electronic database for potential production in discovery – although perhaps efficient, convenient, and cost-conscious – does not automatically render the copying of such materials taxable under Section 1920(4) without further explanation. Defendants' description here establishes only that, at most, the electronic copies may have been "essential to the document production process, and fails to establish the copies were necessarily obtained for use in the litigation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930. Accordingly, the

Court should sustain Plaintiff's objection and deny Defendants' request for $5,926.70 in electronic database charges.

The undersigned appreciates that, by denying Defendants' request for their electronic database costs, along with many of their other requested costs, Defendants will recover significantly fewer costs than they actually incurred in defending against Plaintiff's claims and preparing to respond to anticipated discovery requests. But, as noted by the Fourth Circuit in *Country Vintner,*

> [t]hat [the defendants] will recover only a fraction of [their] litigation costs under [the undersigned's] approach does not establish that [the undersigned's] reading of the statute is too grudging in an age of unforeseen innovations in litigation-support technology. The Supreme Court has emphasized that "costs almost always amount to less than the successful litigant's total expenses," and § 1920 is "limited to relatively minor, incidental expenses." *Taniguchi*, 132 S. Ct. at 2006. Moreover, "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). To the extent that such costs are excessive, a party "may invoke the district court's discretion under [FED. R. CIV. P. 26] to grant orders protecting [it] from undue burden or expense ..., including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Id.* (internal quotation marks omitted). When ... a district court denies a protective order, the movant can appeal that decision; it cannot obtain the same relief from § 1920, which "impose[s] rigid controls on cost-shifting in federal courts." *Crawford Fitting Co.*, 482 U.S. at 444, 107 S.Ct. 2494.

*Country Vintner*, 718 F.3d at 260-61 (footnotes omitted).

## Conclusion

For the reasons explained above, the Court should grant Plaintiff Christopher Gonzales's Objection to Defendants' Bill of Costs and Motion for Court to Review/Retax Costs [Dkt. No. 56], and the Court should direct the Clerk of the Court to tax the Bill

of Costs [Dkt. No. 54] in the amount of $35.00 for subpoena fees and $19.80 in transcript fees for payment by Plaintiff Christopher Gonzales.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 4, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE